IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.	Criminal Action No. 5:18-CR-1

EUGENE ROBERT LECLEAR,

    Defendant.

## **REPORT AND RECOMMENDATION**

**I.	INTRODUCTION**

This case is now before the Court on the Defendant's [ECF No. 40] Motion to Suppress. The Court held a hearing on this Motion on May 2, 2018. The Defendant appeared in person, and by his counsel, Christopher J. Gagin, Esq. The Government appeared through its counsel, Randolph J. Bernard, Esq. FBI Special Agent James Rogers, Tamalee Miller, and the Defendant all testified.

**II.	BACKGROUND**

On December 20, 2017, a search warrant was issued by this Court pursuant to an ongoing investigation of the Defendant for his involvement in an alleged extortion scheme. The search warrant authorized the investigating agent to search, in pertinent part, a 2011 Chevrolet car, registered to Tamalee Miller, but which the Defendant had been driving for the duration of the investigation. The warrant was executed, and the Defendant was arrested pursuant to a criminal complaint and arrest warrant also issued by this Court.

The Defendant was subsequently indicted by a grand jury on January 9, 2018. The indictment charged the Defendant in Count One with Conspiracy to Commit Extortion, and in Counts 2-4 with Interstate Communications with the Intent to Extort. ECF No. 19. The

1

indictment was superseded on February 21, 2018, and again on May 1, 2018. The second superseding indictment charges Defendant in Count One with Conspiracy to Commit Extortion, in Counts 2-4 with Interstate Communications with the Intent to Extort, in Counts 5-8 with Wire Fraud, and in Counts 9-12 with Money Laundering. ECF No. 44. There is also a forfeiture allegation. The instant Motion was filed on April 16, 2018.

### III.   DISCUSSION

The Defendant argues that the search of the vehicle's trunk, and the seizure of certain documents ("the documents") from the trunk, went beyond the scope of the search warrant and therefore constituted an unreasonable and unlawful search and seizure under the Fourth Amendment of the United States Constitution. The Defendant concedes that the warrant was "facially valid", still, because he maintains officers serving the warrant engaged in a "fishing expedition", he argues suppression of all evidence obtained from the warrant is appropriate.

The Government argues that the Defendant's argument fails for three reasons. First, because the car did not legally belong to the Defendant, and although he had previously had permission from the rightful owner to use it, that permission had been rescinded and the Defendant therefore did not have a reasonable expectation of privacy with respect to the car. Second, the seizure of the document or documents at issue was authorized under the plain view doctrine. Third, that the documents at issue would have been inevitably discovered during the course of the investigation. Therefore, the Government argues that no evidence seized from the car during the execution of the search warrant should be suppressed.

#### A.  The Defendant Did Not Have a Reasonable Expectation of Privacy

The Defendant argues that the seizure of the documents at issue, namely a letter purporting to be from the FDIC, went beyond the scope of the search warrant and violated his

constitutional protections against unreasonable search and seizure. The Fourth Amendment to the Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure is unreasonable when it infringes on "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jaccobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In order to take advantage of the protections afforded by the Fourth Amendment, the person claiming the protection must have a legitimate expectation of privacy "in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed2d 387 (1978). To demonstrate a valid expectation of privacy, a Defendant must have a subjective expectation of privacy; however, the Defendant's subjective expectation must also be objectively reasonable. *United States v. Bullard*, 645 F.3d 237, 242 (4th Cir. 2011).

The Government argues that the Defendant could not have had an expectation of privacy because the car did not belong to him and he no longer had permission to possess it, even though he did for a period of time. Indeed, the car's owner testified at the hearing that she told the Defendant on multiple occasions that he no longer had her permission to use to car and that he needed to return it to her. She even suggested that he could leave it somewhere and she would pick it up if he did not wish to see her. She went as far as telling the Defendant that she would contact the police to report the car stolen if it was not returned. Although the Defendant ignored her requests, she never followed through on her threat. The Defendant had possession of the car for several months and seemingly had no intention of returning it. Therefore, the Defendant clearly had a subjective expectation of privacy. Accordingly, the Court turns to whether the Defendant's subjective expectation was objectively reasonable.

To be objectively reasonable, the Defendant expectation must be one "that society is willing to recognize as reasonable." *United States v. Bullard*, 645 F.3d 237 at 242. In

determining whether a subjective expectation is objectively reasonable, the Court should look to the evidence in the record. *United States v. Castellanos*, 716 F.3d 828, 835 (4th Cir. 2013). The evidence in the record is clear that: first, the car did not legally belong to the Defendant, and second, the Defendant knew he did not have a possessory interest because a possessory interest requires you to have a right to have the vehicle. The Defendant had been told multiple times by the owner of the vehicle that he no longer had her permission to possess the vehicle. Showing a legitimate expectation of privacy in the area searched is the burden of the Defendant. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2256, 65 L.Ed.2d 633 (1980). No matter how confident the Defendant was that he would have the car at his disposal for the foreseeable future, the Court cannot overlook the fact that he knew he no longer had permission to possess the car. The Court believes this forecloses the possibility of the Defendant having a expectation of privacy that society would be willing to recognize as reasonable. Accordingly, the Defendant lacked a reasonable expectation of privacy, and therefore lacks standing to assert the protections afforded by the Fourth Amendment.

### B. The Seizure was Authorized Under the Plain View Doctrine

"Under certain circumstances the police may without a warrant seize evidence in 'plain view,' though not for that reason alone and only when the discovery of the evidence is inadvertent." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Warrantless seizures of incriminating evidence are authorized when: 1. the officer is lawfully in a place from which the object may be plainly viewed; 2. the officer has a lawful right

of access to the object itself; and 3. the object's incriminating character is immediately apparent. *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1197).

Under the first prong of the test articulated in *Jackson*, the officer must lawfully be in a place from which the object may be viewed. *Id*. In the instant case, the agent was lawfully searching the truck of a car being used by the Defendant pursuant to a search warrant that counsel for Defendant admitted, both in writing and verbally, was valid on its face. It is undisputed that the documents were found in the trunk of the subject car during the execution of the search warrant. Therefore, the first prong of the *Jackson* test is satisfied.

Under the second prong of the test articulated in *Jackson*, the officer must have a lawful right of access to the object itself. *Id*. Here, the application for search warrant specifically mentions any "documents or papers" related to the criminal activity being investigated. Clearly, the agent not only had a lawful right to search the trunk, but specifically had a lawful right to access the documents in question pursuant to the plain language in the application for search warrant. Therefore, the second prong of the *Jackson* test is satisfied.

Lastly, the third prong of the test articulated in *Jackson* states that the object's incriminating character must be immediately apparent. *Id*. The evidence at the hearing was that among the documents found in the trunk was a fraudulent letter purporting to be from the FDIC. The letter was found in various stages of development. Additionally, there were pages containing several copies of the FDIC logo, and what appeared to the agent to be a paper on which someone had practiced recreating the signature of an FDIC official. It stands to reason that any individual with even remedial law enforcement training would suspect these documents could be part of a scheme constituting illegal activity, much less a special agent with the FBI, which is who was searching the trunk in the instant case. Indeed, Special Agent Rogers testified

that he immediately suspected the documents were related to a fraudulent scheme of some sort. Therefore, the third prong of the *Jackson* test is satisfied, and a warrantless seizure of the documents would have been lawful under the plain view doctrine even had the Defendant had a reasonable expectation of privacy.

### C. The Documents Would Have Been Inevitably Discovered

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without" the seizure exceeding the scope of the search warrant. *Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016); citing *Nix v. Williams*, 467 U.S. 431, 443-444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Under the inevitable discovery doctrine, the Government will be allowed to use evidence it obtains from an otherwise unreasonable search if it can establish the evidence would have "ultimately or inevitably" been discovered lawfully. *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017); citing *Nix v. Williams*, 467 U.S. 431, 444. This must be shown by a preponderance of the evidence. *Id*.

Here, it appears the documents would have been inevitably discovered in not one, but three other ways even had they not been seized from the trunk. First, the search resulted in the seizure of a laptop computer and phone. The Defendant does not challenge the lawfulness of the seizure of either of these items. These electronic devices contained images of the documents. Therefore, the documents would have been inevitably discovered from the FBI's search of the devices. Second, the Defendant was arrested at the time the search was performed on the car so he would not have had the opportunity to remove the documents from the car prior to the car being returned to its rightful owner. The owner of the car, Ms. Miller, testified that she subsequently turned over all the remaining documents in the car that she thought might be relevant to the FBI, which very likely would have included the documents at issue had they not

been seized. Lastly, upon interviewing Ms. Miller, the FBI discovered she had reportedly been a victim of the FDIC letter. In fact, based on Ms. Miller's testimony, it is plausible the FDIC letter was partially created to obtain money from Ms. Miller's family members. Ms. Miller was familiar with the FDIC letter and even had images of it on her phone. This is yet another way the documents would have been inevitably discovered.

Therefore, the Court believes the Government showed by a preponderance of the evidence that the documents would have been "ultimately or inevitably" discovered.

## IV. RECOMMENDATION

For the above reasons, the Court recommends that Defendant's [ECF No. 40] Motion to Suppress be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, the United States Marshal Service, and the United States Probation Office, as provided in the Administrative

Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 8, 2018	/s/ *James E. Seibert*
	JAMES E. SEIBERT
	UNITED STATES MAGISTRATE JUDGE